

IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SUNTRUST MORTGAGE, INC.,        )
a Virginia Corporation          )
                                )
        Plaintiff,              )
                                )
v.                              )     Civil Action No.: 3:11CV288
                                )
AMERICAN BANK, F.S.B.,          )
a Federally Chartered Savings Bank )
4800 Montgomery Lane, 10th floor )
Bethesda, Maryland 20814         )
Serve:                          )
Secretary of the Commonwealth    )
1111 East Broad Street, 1st floor )
Richmond, VA 23219               )
                                )
        Defendant.              )

## COMPLAINT

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, states the following for its

Complaint against American Bank, F.S.B. ("American"):

### PARTIES

1.      SunTrust is a Virginia corporation with its principal place of business located in

Richmond, Virginia.

2.      American is a federally charted savings bank with its principal place of business

located in Rockville, Maryland.

### JURISDICTION AND VENUE

3.      Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is diversity of

citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of

interest and costs.

4.      Jurisdiction and venue are proper in this Court because the parties entered into a Correspondent Loan Purchase Agreement, dated January 1, 2001 ("the Agreement"), that contains a forum selection clause recognizing, for the purpose of any action to enforce the Agreement, that American submits to personal jurisdiction in the Commonwealth of Virginia and venue in this Court. This is an action to enforce the Agreement. A copy of the Agreement is attached as Exhibit 1.

## FACTUAL BACKGROUND

### The Correspondent Loan Purchase Agreement

5.      On or about January 1, 2001, SunTrust and American entered into the Agreement pursuant to which American agreed to sell on a servicing released basis certain residential mortgage loans (the "Loans") approved from time to time by SunTrust.

6.      For each mortgage loan sold by American to SunTrust under the Agreement, American represented and warranted that:

17.1.   Validity of Obligation. The Mortgage Loan documents have been duly executed by the Borrower and are valid and genuine and binding obligations of the Borrower. The Note is a valid and genuine, binding and enforceable negotiable instrument and is not subject to any claims, defenses, setoffs or counterclaims. The Mortgage is valid and genuine, binding and enforceable and creates a lien of the priority agreed upon with Purchaser on the Secured Property, subject only to (a) liens for real estate taxes not yet due and payable, (b) special assessments not yet due and payable, or (c) covenants, conditions, easements or rights-of-way acceptable to Purchaser and satisfactory (i) under Freddie Mac/Fannie Mae Requirements or investor specific requirements, if the Mortgage Loan is a Conventional Mortgage Loan, or (ii) under GNMA Requirements, if the Mortgage Loan is a FHA/VA Mortgage Loan. The Mortgage is properly recorded in the land records of the appropriate jurisdiction, and no portion of the lien has been released or subordinated.

. . .

2

17.3   Eligibility.

    17.3.1   Eligibility of Conventional Mortgage Loans.   Each Conventional Mortgage Loan is in full compliance with this Agreement and the Manual including, without limitation, all underwriting and credit requirements.

    17.3.2   Elibility of FHA/VA Mortgage Loans.  Each FHA/VA Mortgage Loan is in compliance with this Agreement; the Manual; GNMA Requirements; and all applicable laws rules, regulations, requirements, and guidelines that are applicable to FHA/VA Mortgage Loans including, without limitation, HUD Mortgagee Letters, HUD Handbooks, HUD Guidelines, HUD Notices, HUD Issuances, the VA Lender's Handbook, VA Loan Guarantee Releases, and VA Loan Guarantee Circulars.

7.    Under the terms of the Agreement, American agreed to repurchase individual mortgage loans sold to SunTrust in certain situations:

    20.    Repurchase Requirements.   In addition to any other rights and remedies which Purchaser may have against Seller, Seller agrees to repurchase any Mortgage Loan (or, if the Mortgage Loan has been foreclosed upon, to purchase the Secured Property if it is still held by Purchaser) within 10 calendar days after Purchaser's demand, resulting from the occurrence [sic] any of the events specified in Section 20.1.

8.    Under Section 20.1, the requirement to repurchase may be triggered by a variety of events, including, but not limited to, the breach of a warranty or representation (20.1.1), false or misleading statements submitted or furnished by American to SunTrust (20.1.3), and the early payment delinquency of a loan (20.1.4).

9.    Under the terms of the Agreement, American also agreed to indemnify SunTrust in certain situations:

    22.    Indemnity.  Seller hereby agrees to indemnify, defend and hold harmless Purchaser and its successors, affiliates, and assigns, together with their respective officers, directors, employees and agents (collectively, the "Indemnitees"), from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from (a) a breach by Seller of any representation, warranty, term, condition or obligation contained in or made pursuant to the Manual, this Agreement or any other agreement between Seller and Purchaser relating

3

to the purchase of Mortgage Loans, (b) a failure by Seller to disclose any information that renders any such representation or warranty misleading or inaccurate, (c) any materially inaccurate, incomplete, false, or misleading information provided by or through Seller to Purchaser, (d) any misrepresentation made by or through Seller to Purchaser concerning any Mortgage Loan, or (e) Seller's ownership of or actions with respect to any Mortgage Loan.  This Section 22 shall survive any purchase, sale or transfer of any Mortgage Loan or any interest therein by any of the Indemnitees, the liquidation of the Mortgage Loan, or any termination of this Agreement.

### The Baah Loan

10.     On or about June 15, 2007, an individual purporting to be Nana A. Baah ("the Baah Loan borrower") purchased the real property located at 17106 Clairfield Lane, Upper Marlboro, Maryland 20772 (the "Baah Property").

11.     In order to purchase the Baah Property, the Baah Loan borrower obtained a mortgage loan through American in the amount of $395,000.00, which was secured by a purchase money deed of trust on the Property (the "Baah Loan").

12.     On or about June 22, 2007, American sold the Baah Loan to SunTrust for $397,586.17.  SunTrust subsequently sold the Baah Loan on July 23, 2007 to the Federal National Mortgage Association ("Fannie Mae").  SunTrust retained the servicing rights for the Baah Loan.

13.     On or about April 23, 2008, Fannie Mae notified SunTrust of its obligation to repurchase the Baah Loan due to irregularities in the origination of the Loan.

14.     In response to Fannie Mae's repurchase demand for the Baah Loan, SunTrust conducted an investigation of the Loan.

15.     SunTrust's investigation of the Baah Loan revealed the following irregularities:

    a.  Identity theft.  Upon information and belief, Nana Baah ("Baah") was the victim of identity theft, and the Baah Loan borrower, who purported to be

4

Baah, received the loan from American.   Baah provided SunTrust with various documentation indicating continued occupancy and employment in her home state, Oklahoma.   She has no connection to Maryland and did not apply for the Baah Loan.

b.   Fraudulent claim of employment.   The Baah Loan borrower indicated employment by City Airport Shuttle and claimed monthly income of $7,498.00.   The Baah Loan borrower provided documentation to support the income claim.   Upon information and belief, and according to the Maryland Department of Assessments and Taxation, the business ceased operating almost six years prior in October 2001.

c.   Failure to disclose other real estate owned.   In addition to the Baah Property, another property, which is located at 9812 Tam O'Shanter Drive, Upper Marlboro, Maryland (Baah Property #2), was purchased in Baah's name. The application for the Baah Loan failed to mention the $417,000.00 debt associated with Baah Property #2, which was required.

d.   Fraudulent verification of rent.   The Baah Loan borrower claimed to have rented property in Maryland for 3.5 years.   However, upon information and belief, the phone number provided to American for verification purposes belonged to Isaac Adu.   Adu sold Baah Property #2 to the Baah Loan borrower.   The actual owner of the claimed rental is Evelyn Lomo, who, according to records, purchased the property in March 2007.

e. <u>Failure to occupy</u>. The Baah Loan borrower claimed to purchase the Baah Property for occupation by owner. Upon information and belief, Baah has never been to Maryland or intended to occupy the Baah Property.

f. <u>Improper disbursement</u>. The Department of Housing and Urban Development ("HUD") Settlement Statement reflects a $45,000.00 disbursement to Daniel Mensah & Associates. Upon information and belief, this was an improper disbursement because there was no recorded deed to be paid off for this amount, nor was there any improvement work to the Baah Property that would have required such funding.

16. Based on these discrepancies and omissions, SunTrust determined that the Baah Loan was made based on false, misleading, and incomplete information and that American had failed to ensure that the Baah Loan constituted a "valid and genuine and binding" obligation on Baah. As a result, SunTrust's losses associated with the repurchase of the Baah Loan are eligible for indemnification by American under Section 22 of the Agreement.

17. On or about April 3, 2009, SunTrust repurchased the Baah Loan for $437,986.36 as required by Fannie Mae.

18. On or about August 25, 2009, SunTrust sold the Baah Property to a third party for $188,000.00. SunTrust applied the net proceeds from this sale to the Baah Loan balance, reducing the Baah Loan balance to $284,074.63.

19. By letter dated September 17, 2009, and in accordance with Sections 17.1, 17.3, and 22, SunTrust requested indemnification by American for losses associated with the Baah Loan. SunTrust has repeatedly affirmed this request, most recently by letter dated January 31, 2011.

6

20.    As of January 31, 2011, SunTrust had incurred losses related to the Baah Loan totaling $306,391.62.

21.    To date, American has refused to indemnify SunTrust for the loss associated with the Baah Loan in accordance with Sections 17.1, 17.3, and 22 of the Agreement.

## The Osorio Loan

22.    On or about October 2, 2007, Gerardo Osorio ("Osorio") purchased the real property located at 8118 Murray Hill Drive, Fort Washington, Maryland 20744 (the "Osorio Property").

23.    In order to purchase the Osorio Property, Osorio obtained a mortgage loan through American in the amount of $370,500.00, which was secured by a purchase money deed of trust on the Property (the "Osorio Loan").

24.    On or about October 16, 2007, American sold the Osorio Loan to SunTrust for $375,980.98.  SunTrust subsequently sold the Osorio Loan on November 13, 2007 to Fannie Mae.  SunTrust retained the servicing rights for the Osorio Loan.

25.    On or about April 2009, SunTrust conducted an investigation of the Osorio Loan, which revealed the following irregularities:

    a.   <u>Misrepresentation of employment</u>.  Osorio claimed to have been employed at Marlop Co. in Springfield, Virginia for two years and three months.  This claim was verified by false supporting documentation.  Upon information and belief, Osorio was actually employed by Flippo Construction in District Heights, Maryland for the entire 2007 calendar year.

    b.   <u>Failure to occupy</u>.  Osorio claimed to purchase the Osorio Property for occupation by owner.  Upon information and belief, Osorio has never

7

occupied the Osorio Property and continues to occupy a rental address that he occupied when the Osorio Loan was originated.

26.     Based on these discrepancies and omissions, SunTrust determined that the Osorio Loan was made based on false, misleading, and incomplete information and that American had failed to ensure that the Osorio Loan constituted a "valid and genuine and binding" obligation on Osorio. As a result, SunTrust's losses associated with the repurchase of the Osorio Loan are eligible for indemnification by American under Section 22 of the Agreement.

27.     By letter dated May 18, 2009, and in accordance with Sections 17.1, 17.3, and 22, SunTrust requested indemnification by American for initial losses associated with collecting the Osorio Loan and indicated it would provide American with notice of the total loss for the Osorio Loan once that figure had been finalized.

28.     On or about July 14, 2009, Fannie Mae notified SunTrust of its obligation to repurchase the Osorio Loan due to rescission of mortgage insurance on the Osorio Loan.

29.     On or about September 18, 2009, SunTrust sold the Osorio Property to a third party for $245,000.00. SunTrust later applied the net proceeds from this sale to the Osorio Loan balance, reducing the Osorio Loan balance to $153,709.59.

30.     On or about October 8, 2009, SunTrust repurchased the Osorio Loan for $215,899.84 as required by Fannie Mae.

31.     By letter dated October 27, 2010, SunTrust requested indemnification for its total loss for the Osorio Loan and has repeatedly affirmed this request, most recently by letter dated January 31, 2011.

32.     As of January 31, 2011, SunTrust had incurred losses related to the Osorio Loan totaling $215,899.84.

33.    To date, American has refused to indemnify SunTrust for the loss associated with the Osorio Loan in accordance with Sections 17.1, 17.3, and 22 of the Agreement.

### The Perez Loan

34.    On or about December 14, 2007, Angel Perez ("Perez") purchased the real property located at 5215 Cather Road, Springfield, Virginia 22151 (the "Perez Property").

35.    In order to purchase the Perez Property, Perez obtained a mortgage loan through American in the amount of $417,000.00, which was secured by a deed of trust on the Property (the "Perez Loan").

36.    On or about December 31, 2007, American sold the Perez Loan to SunTrust for $429,386.14. SunTrust subsequently sold the Perez Loan on February 12, 2008 to Fannie Mae. SunTrust retained the servicing rights for the Perez Loan.

37.    On or about January 30, 2009, SunTrust sold the Perez Property to a third party for $280,000.00. SunTrust applied the net proceeds from this sale to the Perez Loan balance, reducing the Perez Loan balance to $163,485.25.

38.    On or about June 9, 2009, Fannie Mae notified SunTrust of its obligation to repurchase the Perez Loan due to irregularities in the origination of the Loan.

39.    On or about October 27, 2009, SunTrust repurchased the Perez Loan for $201,850.95 as required by Fannie Mae.

40.    A review of the Perez Loan by SunTrust revealed that the appraised value of the Perez Property at the time of origination was $525,000.00. Upon information and belief, this figure was grossly inflated. The Property sold one month prior to the appraisal for $300,000.00. The appraiser failed to adequately account for this prior sale, known market conditions in the area, and the value of comparable properties.

41.     Based on these discrepancies and omissions, SunTrust determined that the Perez Loan was made based on false, misleading, and incomplete information and that American had failed to ensure that the Perez Loan constituted a "valid and genuine and binding" obligation on Perez.  As a result, SunTrust's losses associated with the repurchase of the Perez Loan are eligible for indemnification by American under Section 22 of the Agreement.

42.     By letter dated January 31, 2011, and in accordance with Sections 17.1, 17.3, and 22, SunTrust requested indemnification of the Perez Loan by American.

43.     As of January 31, 2011, SunTrust had incurred losses related to the Perez Loan totaling $201,850.95.

44.     To date, American has refused to indemnify SunTrust for the loss associated with the Perez Loan in accordance with Sections 17.1, 17.3, and 22 of the Agreement.

### The Lovell Loan

45.     On or about September 8, 2008, Dixon J. Lovell ("Lovell") purchased the real property located at 2372 West Bud Circle, West Jordan, Utah 84084 (the "Lovell Property").

46.     In order to purchase the Lovell Property, Lovell obtained a mortgage loan through American in the amount of $226,509.00, which was secured by a deed of trust on the Property (the "Lovell Loan").

47.     On or about September 30, 2008, American sold the Lovell Loan to SunTrust for $223,624.23.

48.     By letter dated February 4, 2009, SunTrust informed American that the Lovell Loan had experienced payment delinquency, which made the Loan eligible for repurchase by American pursuant to the Agreement.

49.     On or about February 12, 2009, rather than repurchase the Lovell Loan, American entered into a separate indemnification agreement with SunTrust, a copy of which is attached as Exhibit 2 (the "Lovell Supplemental Indemnification Agreement"). In this Agreement, American agreed to indemnify SunTrust and hold it harmless in lieu of being required to repurchase the Lovell Loan:

> I. Seller shall indemnify and hold STM harmless against all losses, damages, expenses, penalties, fines, forfeitures, legal fees, costs and judgments heretofore and hereafter resulting from any claim, demand, defense or assertion that arises as a result of the Mortgage listed in Section III becoming delinquent or failing to meet certain representations and warranties of the purchased documents.

50.     On or about April 29, 2009, SunTrust agreed to a sale of the Lovell Property for $165,000.00. SunTrust applied the net proceeds from this sale to the Lovell Loan balance, reducing the Lovell Loan balance to $87,518.18.

51.     By letter dated October 27, 2010, SunTrust requested indemnification of the losses associated with the Lovell Loan. SunTrust subsequently reaffirmed this demand by letter dated January 31, 2011.

52.     As of January 31, 2011, SunTrust had incurred losses related to the Lovell Loan totaling $31,517.60.

53.     To date, American has failed to indemnify SunTrust for the loss associated with the Lovell Loan in accordance with Sections 17.1, 17.3, and 22 of the Agreement and Section I of the Lovell Supplemental Indemnification Agreement.

## The Callahan Loan

54.     On or about November 10, 2008, Earl M. Callahan and Darcee Callahan (the "Callahans") purchased the real property located at 2831 Butte Street, Pocatello, Idaho 83201 (the "Callahan Property").

55.     In order to purchase the Callahan Property, the Callahans obtained a mortgage loan through American in the amount of $219,556.00, which was secured by a deed of trust on the Property (the "Callahan Loan").

56.     On or about December 3, 2008, American sold the Callahan Loan to SunTrust for $219,799.95.

57.     By letter dated February 25, 2009, SunTrust informed American that the Callahan Loan had experienced payment delinquency, which made the Loan eligible for repurchase by American pursuant to the Agreement.

58.     Thereafter, rather than repurchase the Callahan Loan, American entered into a separate indemnification agreement with SunTrust, a copy of which is attached as Exhibit 3 (the "Callahan Supplemental Indemnification Agreement"). In this Agreement, American agreed to indemnify SunTrust and hold it harmless in lieu of being required to repurchase the Callahan Loan:

> I. Seller shall indemnify and hold STM harmless against all losses, damages, expenses, penalties, fines, forfeitures, legal fees, costs and judgments heretofore and hereafter resulting from any claim, demand, defense or assertion that arises as a result of the Mortgage listed in Section III becoming delinquent or failing to meet certain representations and warranties of the purchased documents.

59.     On or about May, 21, 2010, SunTrust's duly appointed substitute trustee conducted a foreclosure sale for the Callahan Property and sold the Property to SunTrust for $163,922.00.

60.     By letters dated October 27, 2010, and January 31, 2011, SunTrust notified American that it would seek indemnification for the losses associated with the Callahan Loan.

61.     As of April 15, 2011, SunTrust had incurred losses related to the Callahan Loan estimated to be $20,846.31.

62.     To date, American has failed to indemnify SunTrust for the loss associated with the Callahan Loan in accordance with Sections 17.1, 17.3, and 22 of the Agreement and Section I of the Callahan Supplemental Indemnification Agreement.

### The Dye Loan

63.     On or about October 24, 2008, James D. Dye ("Dye") purchased the real property located at 4448 East Amarillo Drive, Queen Creek, Arizona 85242 (the "Dye Property").

64.     In order to purchase the Dye Property, Dye obtained a mortgage loan through American in the amount of $184,551.00, which was secured by a deed of trust on the Property (the "Dye Loan").

65.     On or about November 25, 2008, American sold the Dye Loan to SunTrust for $185,780.34.

66.     By letter dated February 11, 2009, SunTrust informed American that the Dye Loan had experienced payment delinquency, which made the Loan eligible for repurchase by American pursuant to the Agreement.

67.     On or about February 23, 2009, rather than repurchase the Dye Loan, American entered into a separate indemnification agreement with SunTrust, a copy of which is attached as

13

Exhibit 4 (the "Dye Supplemental Indemnification Agreement"). In this Agreement, American agreed to indemnify SunTrust and hold it harmless in lieu of being required to repurchase the Dye Loan:

> I. Seller shall indemnify and hold STM harmless against all losses, damages, expenses, penalties, fines, forfeitures, legal fees, costs and judgments heretofore and hereafter resulting from any claim, demand, defense or assertion that arises as a result of the Mortgage listed in Section III becoming delinquent or failing to meet certain representations and warranties of the purchased documents.

68.     On or about October 6, 2010, SunTrust's duly appointed substitute trustee conducted a foreclosure sale for the Dye Property and sold the Property to SunTrust for $70,504.00.

69.     By letters dated October 27, 2010, and January 31, 2011, SunTrust notified American that it would seek indemnification for the losses associated with the Dye Loan.

70.     As of April 15, 2011, SunTrust had incurred losses related to the Dye Loan estimated to be $67,691.37.

71.     To date, American has failed to indemnify SunTrust for the loss associated with the Lovell Loan in accordance with Sections 17.1, 17.3, and 22 of the Agreement and Section I of the Dye Supplemental Indemnification Agreement.

## COUNT I: BREACH OF CONTRACT

72.     SunTrust incorporates the allegations set forth in paragraphs 1 through 71 as if set forth fully herein.

73.     The parties' Agreement required American, in selling the Loans to SunTrust, to represent and warrant that the Loans were duly executed by all borrowers; constituted "valid and genuine and bindings obligations" of the Borrowers; were "valid and genuine, binding and

14

enforceable" negotiable instruments; and were "not subject to any claims, defenses, setoffs or counterclaims."

74.     SunTrust's review of the Baah, Osorio, and Perez Loans revealed that American had breached its obligations under the Agreement by selling to SunTrust Loans that contained significant discrepancies and omissions.  As a result, SunTrust's losses, which were incurred as a result of the repurchase of the Baah, Osorio, and Perez Loans, are eligible for indemnification under Sections 17.1, 17.3 and 22 of the Agreement.

75.     Upon demand by SunTrust, in accordance with Section 22 of the Agreement, American further breached the Agreement by failing to indemnify SunTrust for claims associated with the Loans.

76.     Specifically, Section 22 of the Agreement requires American to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information"; or "any misrepresentation made by or through" American.

77.     As a result of American's breach of the Agreement, SunTrust has been damaged to date in the amount of $724,142.41, reflecting losses incurred from the non-performance of the Baah, Osorio, and Perez Loans, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

WHEREFORE, SunTrust Mortgage, Inc., by counsel, respectfully requests that the Court enter judgment and award damages against American Bank in the amount of $724,142.41,

15

together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement, post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT II: BREACH OF CONTRACT

78.     SunTrust incorporates the allegations set forth in paragraphs 1 through 77 as if set forth fully herein.

79.     The parties' Agreement required American, upon demand by SunTrust, to repurchase the Loans in the event of specific enumerated occurrences.

80.     SunTrust's review of the Lovell Loan indicated early payment delinquency of the Loan, which made the Lovell Loan eligible for repurchase under Section 20 of the Agreement.

81.     In recognition of this repurchase obligation, American entered into the Lovell Supplemental Indemnification Agreement, whereby American again agreed to indemnify SunTrust for its losses associated with the non-performance of the Lovell Loan in lieu of repurchasing the Loan.

82.     The Lovell Supplemental Indemnification Agreement requires American to hold SunTrust "harmless against all losses, damages, expenses, penalties, fines, forfeitures, legal fees, costs and judgments heretofore and hereafter resulting from any claim, demand, defense or assertion that arises as a result of the Mortgage listed in Section III becoming delinquent or failing to meet certain representations and warranties of the purchased documents."

83.     The indemnification requirement of the Lovell Supplemental Indemnification Agreement reaffirmed the indemnification requirement of the parties' initial Agreement. Section 22 of the Agreement requires American to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs,

court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information": or "any misrepresentation made by or through" American.

84.     Upon demand by SunTrust, in accordance with both Section I of the Lovell Supplemental Indemnification Agreement and Section 22 of the Agreement, American further breached its obligations under both Agreements by failing to indemnify SunTrust for claims associated with the Lovell Loan.

85.     As a result of American's breach of both the Agreement and the Supplemental Indemnification Agreements, SunTrust has been damaged to date in the amount of $31,517.60, reflecting losses incurred from the non-performance of the Lovell Loan, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

WHEREFORE, SunTrust Mortgage, Inc., by counsel, respectfully requests that the Court enter judgment and award damages against American Bank in the amount of $31,517.60, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement, post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT III: BREACH OF CONTRACT

86.     SunTrust incorporates the allegations set forth in paragraphs 1 through 85 as if set forth fully herein.

87.     The parties' Agreement required American, upon demand by SunTrust, to repurchase the Loans in the event of specific enumerated occurrences.

88.     SunTrust's review of the Callahan Loan indicated early payment delinquency of the Loan, which made the Callahan Loan eligible for repurchase under Section 20 of the Agreement.

89.     In recognition of this repurchase obligation, American entered into the Callahan Supplemental Indemnification Agreement, whereby American again agreed to indemnify SunTrust for its losses associated with the non-performance of the Callahan Loan in lieu of repurchasing the Loan.

90.     The Callahan Supplemental Indemnification Agreement requires American to hold SunTrust "harmless against all losses, damages, expenses, penalties, fines, forfeitures, legal fees, costs and judgments heretofore and hereafter resulting from any claim, demand, defense or assertion that arises as a result of the Mortgage listed in Section III becoming delinquent or failing to meet certain representations and warranties of the purchased documents."

91.     The indemnification requirement of the Callahan Supplemental Indemnification Agreement reaffirmed the indemnification requirement of the parties' initial Agreement. Section 22 of the Agreement requires American to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information": or "any misrepresentation made by or through" American.

92.     Upon demand by SunTrust, in accordance with both Section I of the Callahan Supplemental Indemnification Agreement and Section 22 of the Agreement, American further

breached its obligations under both Agreements by failing to indemnify SunTrust for claims associated with the Callahan Loan.

93.     As a result of American's breach of both the Agreement and the Supplemental Indemnification Agreements, SunTrust has been damaged to date in the amount of $20,846.31 reflecting losses incurred from the non-performance of the Callahan Loan, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

WHEREFORE, SunTrust Mortgage, Inc., by counsel, respectfully requests that the Court enter judgment and award damages against American Bank in the amount of $20,846.31,together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement, post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT IV: BREACH OF CONTRACT

94.     SunTrust incorporates the allegations set forth in paragraphs 1 through 93 as if set forth fully herein.

95.     The parties' Agreement required American, upon demand by SunTrust, to repurchase the Loans in the event of specific enumerated occurrences.

96.     SunTrust's review of the Dye Loan indicated early payment delinquency of the Loan, which made the Dye Loan eligible for repurchase under Section 20 of the Agreement.

97.     In recognition of this repurchase obligation, American entered into the Dye Supplemental Indemnification Agreement, whereby American again agreed to indemnify SunTrust for its losses associated with the non-performance of the Dye Loan in lieu of repurchasing the Loan.

98.     The Dye Supplemental Indemnification Agreement requires American to hold SunTrust "harmless against all losses, damages, expenses, penalties, fines, forfeitures, legal fees,

19

costs and judgments heretofore and hereafter resulting from any claim, demand, defense or assertion that arises as a result of the Mortgage listed in Section III becoming delinquent or failing to meet certain representations and warranties of the purchased documents."

99.    The indemnification requirement of the Dye Supplemental Indemnification Agreement reaffirmed the indemnification requirement of the parties' initial Agreement. Section 22 of the Agreement requires American to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information": or "any misrepresentation made by or through" American.

100.    Upon demand by SunTrust, in accordance with both Section I of the Dye Supplemental Indemnification Agreement and Section 22 of the Agreement, American further breached its obligations under both Agreements by failing to indemnify SunTrust for claims associated with the Dye Loan.

101.    As a result of American's breach of both the Agreement and the Supplemental Indemnification Agreements, SunTrust has been damaged to date in the amount of at least $67,691.37, reflecting losses incurred from the non-performance of the Dye Loan, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

WHEREFORE, SunTrust Mortgage, Inc., by counsel, respectfully requests that the Court enter judgment and award damages against American Bank in the amount of $67,691.37, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights

under the Agreement, post-judgment interest, and such other relief as the Court deems just and proper.

SUNTRUST MORTGAGE, INC.

By: _Robert Perrow_
Robert D. Perrow (VSB No. 14766)
J.P. McGuire Boyd, Jr. (VSB No. 72753)
Steven P. Gould (VSB No. 80411)
Williams Mullen
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: 804.420.6000
Facsimile: 804.420.6507
Email: bperrow@williamsmullen.com
Email: mboyd@williamsmullen.com
Email: sgould@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

14335018_6.DOC